Frank Koranda, Appellant, v. The Equitable Life Assurance Society of the United States, Appellee.

Gen. No. 38,377.

Opinion filed June 22, 1936. Rehearing denied July 6, 1936.

ARTHUR F. GRUENWALD, of Chicago, for appellant.

MAYER, MEYER, AUSTRIAN & PLATT, of Chicago, for appellee; FREDERIC BURNHAM and MILES G. SEELEY, both of Chicago, of counsel.

MR. PRESIDING JUSTICE HALL delivered the opinion of the court.

This is an appeal from a judgment against plaintiff for costs of suit, entered in the municipal court of Chicago. The cause was submitted to a jury, which returned a verdict for plaintiff and against the defendant for the sum of $2,203.61. After the verdict was returned into open court, upon motion of the defendant, the court set it aside, and under Rule 175 of the municipal court of Chicago, entered judgment against the plaintiff, notwithstanding the verdict of the jury.

The charge in the statement of claim filed in the cause is that the defendant entered into a contract with

Lyon & Healy, Inc., by the terms of which the defendant agreed to pay certain sums to certain employees of Lyon & Healy, Inc., under the terms of a contract of insurance entered into between Lyon & Healy, Inc., and the defendant, upon a showing that such employee, while under the age of 60 years, should become wholly and permanently disabled as a result of bodily injury or disease; that the plaintiff, while under the age of 60 years, and while in the employ of Lyon & Healy, Inc., on December 11, 1930, did become wholly and permanently disabled as a result of bodily injuries received at the hands of unknown persons, and that as a result of such injuries, plaintiff became and was unable to engage in any occupation, or perform any work for profit.

In its affidavit of merits, defendant does not deny that plaintiff was insured, as claimed, nor that he suffered severe injuries and that if he is entitled to recover at all, that the verdict was excessive, but alleges that by the terms of the policy in question, it is provided that ''If proof shall be furnished the society that any employee insured under this policy has . . . become wholly disabled by bodily injuries or disease, and will be wholly and presumably permanently prevented thereby for life from pursuing any and all gainful occupation, the society will pay six months after receipt of such proof, in full settlement of all obligation under this contract pertaining to such employee, the full amount of the insurance on such life . . . . The insurance under this policy upon the life of any employee covered by this contract shall automatically cease and determine . . . upon the termination of such person's employment with the employer in the specified classes of employees without regard to the cause of such termination . . . . New employees shall be eligible for insurance upon the above basis upon the completion of three (3) months of service; and for pur-

poses of insurance, reemployment will be classed as new employment and will be subject to all the requirements thereof. This policy, together with the employer's application therefor, copy of which is hereto attached . . . shall constitute the entire contract between the parties." Defendant denies, however, that, as a result of any injuries sustained by the plaintiff, he became wholly and permanently disabled within the terms of the policy, nor at a time while insured under said policy, and denies that defendant furnished proof of any claim entitling him to any disability benefits under the terms of the policy, but alleges that plaintiff instead, furnished proof to it which purported to be proof of permanent disability, but which proof affirmatively shows that plaintiff did not become totally and permanently disabled within the terms of the contract of insurance.

It is further alleged in the affidavit of merits that about February 4, 1931, while plaintiff was not totally and permanently disabled within the terms of the policy, plaintiff's employment by his employer was terminated, and that therefore, plaintiff did not become eligible for insurance under the terms of the policy.

The record shows that on and prior to December 11, 1930, plaintiff was employed by Lyon & Healy, Inc., and was insured by defendant against total and permanent disability under a group policy issued to Lyon & Healy, Inc., his employer, and that on that date, he suffered a severe injury. The record also shows that on February 6, 1931, Lyon & Healy, Inc., entered upon its employment records a notation as to plaintiff to the effect that "Services not required after January 15th, 1931, . . . Salary—time due to and including January 15th, 1931." A similar notation was made on plaintiff's payroll card by his employer. It is further shown that on February 28, 1931, Lyon & Healy, Inc., notified defendant of the termination of Koranda's employment as of January 15, 1931. In so far as we can

determine from the record, defendant, at this time, had not been notified that plaintiff had suffered severe injuries, and it is asserted that it was then without knowledge of any reason why his employer had terminated plaintiff's employment. It is defendant's contention that the above acts being a termination of plaintiff's employment by his employer, therefore, his insurance under the terms of the policy was terminated. The record further shows that subsequent to all of the above, and on March 16, 1931, Koranda went back to work for Lyon & Healy, Inc., and continued in his employment until June 6, 1931. Koranda testified that prior to June 6, 1931, he had never been notified that he had been discharged, and that he continued to work as best he could, upon the advice of a Dr. Kelly. There is nothing in the record to suggest that this is not the fact.

It is plaintiff's contention, however, that he was unable to perform his duties after he went back to work. It is defendant's contention that, under the terms of the policy, plaintiff's being taken back to work did not reinsure him, because it was necessary, after reinstatement, that he should work for three months before being entitled to compensation, and that as a matter of fact, he did not do so, but was again discharged on June 6, 1931. The record indicates that it was on May 25, 1932, that defendant received its first notice of plaintiff's injury on December 11, 1930, and that Lyon & Healy, Inc., plaintiff's employer, had previously informed defendant, as stated, that plaintiff had been discharged January 15, 1931, for refusing to return to work after being pronounced sufficiently recovered from his injury which he suffered on December 11, 1930. The proofs furnished by Koranda and by a physician, are to the effect that Koranda had been wholly disabled on June 7, 1931, and that he had last worked on June 6, 1931.

The injury to plaintiff on December 11, 1930, which he claims to be the cause of his permanent disability, was the result of an assault committed upon him while in the employ of Lyon & Healy, Inc., as a piano tuner, and which at the time, rendered him unconscious. He testified that he was taken to the Presbyterian Hospital, and was there treated by Dr. Frank B. Kelly, who testified that he treated the plaintiff every day until plaintiff left that hospital on January 15, 1931, and that the witness saw the plaintiff several times after that date. This physician further testified that on January 15, 1931, plaintiff had a slight paralysis of his right hand and spasticity of the right leg and a slight peculiarity of speech, but that on inquiry, he ascertained that these conditions existed prior to plaintiff's injury; that he examined plaintiff's eyes and found the pupils unequal to light and accommodation; that the blow on plaintiff's head necessitated the taking of 54 stitches, and that the blow plaintiff received could induce a situation like he found in plaintiff; that plaintiff's tongue deviated to the right, which would indicate a disturbance, a nervous lesion, and a possible injury to the brain; that upon making tests, the witness found that plaintiff could not make his fingers meet, and that this would indicate a brain lesion, which would affect the nerves, and that the lesion in the brain caused the condition which he found. The witness also testified that after the plaintiff was at home for a while, that he tested plaintiff's writing, and that at first plaintiff could write very poorly, and that he last saw the plaintiff about May, 1931; that early in March, 1931, he, the witness, suggested to plaintiff that the best thing for him to do was to try to work and get his mind off of his condition and that the witness' relationship with Lyon & Healy, Inc., was such that it was up to the witness to determine when the plaintiff was ready to go to work. This witness stated that on January 15, 1931, the day plaintiff was discharged from the hospital, in

addition to the spasticity of the right leg, he showed a weakness in the right arm and hand; that on submitting the plaintiff to the Romberg test, with plaintiff's eyes closed, that plaintiff could not maintain his balance, and that this indicated a brain lesion in the location which has to do with the balancing center. It is in evidence that the plaintiff admitted to this witness that he had previously had syphilis.

Dr. Abel Anthony, another physician produced by plaintiff, testified that on the evening of December 11, 1930, he had charge of the emergency room of the Provident Hospital, where the plaintiff was first taken on that evening immediately after his suffering the injury, and before he was taken to the Presbyterian Hospital; that at about 5:30 of that evening, the police brought plaintiff to the Provident Hospital, and that at that time, he was in a semi-stupor; that at times, plaintiff was unconscious, but at certain times when stimulated, the witness could get a reaction from plaintiff; that on examination, he found multiple lacerations on plaintiff's head, particularly on the left side, and that there was a depression in his skull; that the witness applied 45 stitches in sewing up these wounds, that there was a hemorrhage in his left eye, which was bloody, and that he had symptoms of a brain injury. This witness also testified that a man's brain may be injured even worse when there is a severe concussion than when the skull is broken; that there was projectile vomiting, the witness said, which indicated a concussion or depression of the brain, and the possible rupture of blood vessels of the brain. Asked for his opinion, the witness testified that he concluded that plaintiff had received an injury to the brain.

A fellow workman of plaintiff, also a piano tuner, testified that before the injury to plaintiff on December 11, 1930, he never noticed any limp or peculiarity in plaintiff's walk, nor any weakness or paralysis of his right hand, nor any peculiarity of his

eyesight; that he had seen plaintiff tune pianos many times, and that he did his work properly; that when plaintiff came back to work on March 16, 1931, the plaintiff was entirely different from what he was before; that he limped and was unable to use his arm for tuning, and that the witness noticed a peculiarity in plaintiff's speech; that prior to that time, plaintiff had been congenial, but that after the accident, he became very abusive; that between March 16 and June 6, 1931, the only work plaintiff did around the place was small jobs like glueing ivories on keys, and that he was unable to engage in his former work of tuning pianos; that when he attempted to use a tool, or pick up objects, they would drop from his fingers, and that he had no control of tools with his right hand, and that plaintiff was right-handed.

The testimony of this witness was corroborated by other employees of Lyon & Healy, Inc.

Another physician testified that he examined the plaintiff on January 21, 1935. He described certain scars on plaintiff's head, and stated that the pupils of his eyes did not react properly; that there is a disturbance in plaintiff's speech; that the right arm is not paralyzed, but that there is lameness, and that the arm does not function, and that plaintiff walks lame on his right leg. This witness testified that, in his opinion, plaintiff had suffered a brain lesion on the left side, affecting his speech, and affecting the motor area for the right side of his body, and that in his opinion, plaintiff is totally and permanently disabled for gainful work, inasmuch as the length of time since the injury is sufficient for him to make the maximum degree of recovery, if that were possible.

No testimony was offered on the part of the defendant to refute the testimony of the physicians as to plaintiff's injuries and the condition resulting therefrom. Defendant stresses the point that plaintiff, in

his notice to defendant company dated July 30, 1932, stated that he became wholly disabled on June 7, 1931, by being struck on the head on December 11, 1930, and for that reason, he cannot recover. The jury found for plaintiff, and from all the evidence in the case, it seems obvious that if plaintiff was totally disabled on June 7, 1931, such disability was clearly the result of the injury which he received when he was assaulted. It is very clear that his effort to work was made at the suggestion and upon the advice of the company's physician, Dr. Kelly, and that plaintiff was unable to perform his work.

We are of the opinion that plaintiff's right of action against the defendant accrued prior to the time of his discharge, and that the trial court was in error in entering a judgment for defendant, notwithstanding the verdict of the jury. It is, therefore, ordered that judgment be entered here against defendant for the amount of the verdict, to wit: the sum of $2,203.61.

*Reversed and judgment entered here.*

Hebel, J., and Denis E. Sullivan, J., concur.